# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0858
Filed February 11, 2026

————————————

**In the Interest of N.G. and C.G., Minor Children,**

**S.H., Mother,**
Appellant,

**N.G., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Kimberly Ayotte, Judge.

————————————

**AFFIRMED ON BOTH APPEALS**

————————————

Bryan Webber of Carr Law Firm, P.L.C., Des Moines,
attorney for appellant mother.
Teresa Pope of Pope Law, PLLC, Des Moines,
attorney for appellant father.
Brenna Bird, Attorney General, and Mackenzie Moran,
Assistant Attorney General, attorneys for appellee State.
Sarah Dewein of Cunningham & Kelso, PLLC, Urbandale,
attorney and guardian ad litem for minor children.

————————————

Considered without oral argument
by Tabor, C.J., and Greer and Chicchelly, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

A mother and father separately appeal the termination of their parental rights to two daughters. The mother challenges the statutory grounds for termination. Both parents seek to apply a statutory exception to termination. The father doesn't challenge the statutory grounds for termination but contends termination was not in the children's best interests. He also advocates for placing the children in a guardianship with his mother. On our review, we affirm.[1]

## I. Facts and Prior Proceedings

The juvenile court intervened with this family in 2020 when their son was born with THC in his system.[2] The parents lost their rights to him in 2022. The primary concerns through those child-in-need-of-assistance (CINA) proceedings were the parents' substance use, domestic violence, criminal charges and incarceration, and the parents' lack of engagement with services offered by the Iowa Department of Health and Human Services.

In September 2022, N.G. was born, also testing positive for THC. The department began a new CINA proceeding but custody of N.G. remained with her mother. In August 2023, that arrangement ended when the mother tested positive for cocaine. The court ordered N.G. removed from the mother, and the department placed her with a maternal aunt.

---

[1] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). The juvenile court's factual findings do not bind us, but they deserve respectful consideration, especially on witness credibility. *Id.*

[2] Tetrahydrocannabinol is the active component of marijuana.

C.G. was born in January 2024. Her drug screen was negative, and the mother seemed to be making progress in complying with the reunification goals. But just a few months later, her compliance waned, and the department petitioned to remove C.G. from her custody. When department workers arrived to remove the child—along with police officers to arrest the mother on outstanding warrants—they discovered that the maternal aunt had returned N.G. to her mother without notifying them. A drug screen on N.G. was positive for six illegal substances. The department then placed both children together with a foster family, where they have remained since.

Throughout the case, the mother's engagement with services and court orders has been inconsistent. She tested positive for illegal drugs several times, including the month before the termination hearings. She delayed substance-use evaluations, never completed substance-use treatment, and was discharged from therapy seven times due to non-attendance. At the time of the final termination hearing, she had been attending therapy for a month. And she continued to engage in criminal behaviors, leaving her retail job because she was charged with theft of items from the store. She maintained intimate relationships with unsafe people, including an on-again-off-again relationship with the children's father.

The father did not engage with services or communicate with the department until July 2024. He was in and out of jail during the CINA case and has a long criminal history including convictions for illegal drugs, domestic assaults, and possession of weapons, as well as probation and no-contact order violations. The month before the termination hearings, he was charged with intimidation with a dangerous weapon, felon in possession of a firearm, willful injury, and two counts of assault while participating in a

felony. His drug screen that month was positive for K2, a synthetic marijuana.

The State petitioned for termination of the parents' rights in December 2024, and the juvenile court held hearings on February 24, April 14, and April 22, 2025. At the hearings, the father testified he had no substance-use problems and had never committed domestic violence. He added that the mother is a safe parent and he was unaware of her substance use. He asserted the positive drug tests for himself, his children, and the mother were inaccurate or falsified. The mother also testified that her drug screens were inaccurate and denied using illegal substances since 2023. She also couldn't explain how the children tested positive for drugs.

The court terminated the parents' rights under Iowa Code section 232.116(1) (2024), paragraphs (f) and (g) as to N.G., (g) and (h) as to C.G., and additionally the father's parental rights under paragraph (e) as to both children. The parents appeal separately.

## II.    Discussion

Termination involves three steps. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, the State must prove a statutory ground for termination under Iowa Code section 232.116(1). *Id.* Second, the State must show termination is in the children's best interests under section 232.116(2). *Id.* Third, parents may rely on exceptions to termination in section 232.116(3). *Id.* We only address those steps that the parents dispute. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

We address the mother's statutory-grounds argument and the parents' joint statutory-exception argument first. Then we address the father's best-interests and guardianship arguments.[3]

## A. Statutory grounds

The mother challenges all three grounds cited in the termination order. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The juvenile court found sufficient grounds to terminate under paragraph (f) as to N.G. and paragraph (h) as to C.G. *See* Iowa Code § 232.116(1). The mother challenges only the common final element of those grounds, which requires clear and convincing proof that the child cannot presently be returned to parental custody as provided in section 232.102.[4] *See id.*

---

[3] Beyond those claims, both parents assert their "fundamental liberty interest" in the parent-child relationship. The mother asserts termination violates her due process and equal protection rights. But the parents didn't raise or obtain a ruling on those claims, so they are unpreserved. *State v. Bauler*, 8 N.W.3d 892, 907 (Iowa 2024) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal." (citation omitted)). And even if preserved, the parents' petitions on appeal aren't detailed enough to address the issue. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (holding failure to identify error constitutes a waiver).

[4] Our caselaw offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102, which discusses transferring the child's custody if staying in the home would be "contrary to the welfare of the child." In *In re M.M.*, the supreme court held that a child cannot be returned if it would expose him or her to "any harm amounting to a new child in need of assistance adjudication." 483 N.W.2d 812, 814 (Iowa 1992). Alternately, it means the inability to "safely return" children to their parents' care. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either formulation, the State met its burden of proof here.

§ 232.116(1)(f)(4), (h)(4); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

The mother argues there wasn't clear and convincing proof she couldn't meet the children's needs. True, the mother took some steps toward stable parenting. She lived with her mother, had a new job, and attended some therapy. But the same factors that plagued the mother through the case remained: unaddressed substance use, lack of honesty with the department and service providers, engagement in criminal activity, and ongoing risks of domestic violence. The mother continued to deny the existence of those factors, failed to accept responsibility for them, and didn't recognize their effect on her children. Under these circumstances—the same ones leading to the loss of her parental rights to her older child—there is clear and convincing evidence that the children could not be returned to her custody.

## B. Statutory exception

Next, both parents invoke the statutory exception under Iowa Code section 232.116(3)(c). That paragraph allows the court to override termination if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The parents bear the burden to show clear and convincing evidence that this exception applies. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). "Yet the existence of a bond is not enough." *A.B.*, 956 N.W.2d at 169. And neither parent points to evidence that the children "will be harmed by termination" or "whether that harm overpowers" their inability to provide safe and stable care. *In re I.D.*, No. 24-2045, 2025 WL 1076625, at *2 (Iowa Ct. App. Apr. 9, 2025). Thus, the parents did not prove the exception applies.

## C. Best interests

Next, the father argues that termination of his parental rights is not in his daughters' best interests. In deciding this step, we give primary consideration to the children's safety, to the best placement for fostering their "long-term nurturing and growth," and to their "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). We also consider their integration into their foster family. *See id.* § 232.116(2)(b).

The father engaged in criminal behavior during the CINA case and denied any substance-use or domestic-violence history. He didn't work with the department to improve his parenting until just before the termination hearing. And, as the juvenile court noted, he only appeared for hearings while he was in custody. He has not progressed enough to meet the children's needs. Meanwhile the children have been together in the same foster home for many months and all reports are that they are thriving. The home is a concurrent placement option. So termination of the father's rights best suits the children's long-term best interests.

## D. Guardianship

Finally, the father urges placing the children in a guardianship with his mother, who lives in Missouri. Granted, the paternal grandmother has been the guardian of the father's now-fourteen-year-old son since he was an infant. She completed an interstate home study in late 2024, which was approved. But she moved in 2025, and an updated study had not been completed. She also took care of N.G. for a few months in late 2022 to early 2023. But between March 2023 and December 2024, she had no contact with the department or N.G. She had yet to meet C.G. in person. Her only contact with them since March 2023 has been over video calls. She testified she is

willing to be a placement for N.G. and C.G. and either an adoptive parent or a guardian. The juvenile court determined a guardianship is not in the children's best interests given the paternal grandmother's age and her lack of contact with the children.

Our courts disfavor guardianships, especially for very young children like N.G. and C.G. *See, e.g.*, *A.S.*, 906 N.W.2d at 477–78. In determining what is in the children's best interests, safety and the need for a permanent home are the "defining elements." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially). N.G. has been out of her parents' care since 2023, and C.G. since she was a few months old. The father's circumstances do not signal that he would be able to resume custody at any time. Indeed, he testified that he intended to leave the guardianship with his mother in place until his daughters reach the age of eighteen, just as he has never disturbed her guardianship of her son.

While we appreciate her willingness to care for her grandchildren, we agree with the juvenile court that creating a guardianship with the paternal grandmother is not appropriate. She was absent from the girls' lives for a long stretch, has limited contact now, and has not shown that she can care for two young children long-term. Termination of the father's rights and future adoption, perhaps by their concurrent placement, is in their best interests.

**AFFIRMED ON BOTH APPEALS.**